# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 7 |
| LARRY R. SMITH, | |
| | Case No. 13-41180 |
| Debtor(s). | |
| | |
| THE NATIONAL BANK OF INDIANAPOLIS | |
| AS TRUSTEE OF THE JEANETTE T. STOKELY | |
| AMENDED & RESTATED REVOCABLE TRUST | |
| U/A 12/12/94, | |
| | |
| Plaintiff(s), | |
| | Adversary No. 14-4002 |
| v. | |
| | |
| LARRY R. SMITH, | |
| | |
| Defendant(s). | |

## OPINION

The National Bank of Indianapolis as Trustee of the Jeanette T. Stokely Amended and Restated Revocable Trust U/A 12/12/1994 filed a complaint to determine dischargeability of debt, asking that the debt owed to it by the defendant/debtor be found nondischargeable under 11 U.S.C. § 523(a)(6).[1]  Counsel for the defendant filed an answer on February 27, 2014, denying the pertinent allegations.  Shortly after filing the answer, counsel withdrew as attorney of record for the defendant.  The defendant has represented himself since that time.

In anticipation of a trial on the complaint, the plaintiff filed the following documents: (1) motion to tender into evidence the evidentiary deposition of attorney Jeff Jacob (court document # 79); (2) motion for judicial notice of the Boone County, Indiana Superior Court II court records

---

[1] The original complaint, filed on January 30, 2014, named The Jeanette T. Stokely Amended and Restated Revocable Trust U/A 12/12/1994 as the plaintiff.  On July 10, 2014, the complaint was amended to name the Trustee (The National Bank of Indianapolis) as the plaintiff.

1

(court document # 81); (3) motions to deem admitted the genuineness of documents and admit documents into evidence (court documents # 98, # 99 and # 100); and (4) motion to tender into evidence the evidentiary deposition of Julie Lenahan (court document # 120).[2]  At a hearing on July 21, 2014, the Court granted the motions and admitted all of the plaintiff's exhibits.  The defendant did not object to the admission of the state court records, nor did he offer any exhibits on his own behalf.  The Court granted the plaintiff thirty days to file a motion for summary judgment and the defendant thirty days thereafter to file a response to the motion.

The plaintiff filed a "motion for summary determination," which is now before the Court for consideration.  The Court entered a written order on October 20, 2014 directing counsel for the plaintiff to file a supplemental brief addressing, among other things, the federal rule governing "summary determinations."  The Court granted the defendant fourteen days to file a response to the plaintiff's supplemental brief, and scheduled oral arguments on December 17, 2014.

In response to the Court's order, the plaintiff filed a supplemental brief (Plaintiff's Response to Court's Order Entered on October 20, 2014), explaining that while the plaintiff's motion is entitled "motion for summary determination," plaintiff is, in fact, seeking summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[3]  Plaintiff requests that the Court treat the motion for summary determination as one for summary judgment.  In response, the defendant asserts that the Court cannot construe the motion as one for summary judgment unless the plaintiff first files a motion to amend its pleading.  The Court finds that a separate motion is unnecessary, given that the plaintiff's request was made on the written record in its Response to the Court's October 20, 2014 Order.  Furthermore, in the defendant's initial

---

[2] Julie Lenahan is the trustee officer assigned to the Jeanette Stokely Trust.  See Deposition of Julie Lenahan dated July 14, 2014, p. 5.
[3] Rule 56 is made applicable to bankruptcy cases by Bankruptcy Rule 7056.

objection to the motion for summary determination, he responded, in part, as if the motion was one for summary judgment. The Court finds that there is no prejudice to either party in treating the motion as such. Accordingly, the Court construes the plaintiff's motion for summary determination as a motion for summary judgment, and the defendant's response thereto as an objection to summary judgment.

*The Facts*

The facts set forth below are taken from the pleadings filed in this case and from plaintiff's exhibits that were admitted into evidence on July 21, 2014. Those exhibits include, in large part, certified copies of pleadings, exhibits and orders from the Boone County Superior Court II in Indiana.[4]

The facts reveal that Alfred Stokely was a principal in Stokely-Van Camp Foods and was married to Jeanette Stokely (hereinafter "Mrs. Stokely"). When he passed away, their daughter, Linda Danner, continued to live with Mrs. Stokely part-time and in an assisted care facility the remainder of the time. According to the deposition testimony of attorney Jeff Jacobs – who represented the Stokely family in the state court matters described below – Linda "had a fairly sizable trust from her family." Deposition of Jeff Jacob dated May 6, 2014, p. 8. Mrs. Stokely and William Danner, Linda's brother, are co-attorneys-in-fact for Linda Danner's trust. *Id.* at p. 14.

At some point in time, the defendant (hereinafter "Mr. Smith") attempted to form a relationship with Linda and began making plans to marry her. When Mr. Smith's plan to marry Linda did not materialize, he sent a "Legal Demand Letter for Damages," dated May 1, 2008, to Linda, Mrs. Stokely and William Danner, demanding payment of $200,000.00 in damages for an alleged "breach of marriage promise." Pl.'s Ex. 4 ("Certified Copy of the Official Court Record

---

[4] As previously stated, the defendant did not object to the admission of the state court records.

of Exhibits in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 39), When his demand was not satisfied, Mr. Smith filed a series of lawsuits.

The first suit was filed on July 14, 2008, in Small Claims Court in Marion County, Indiana against Linda Danner for "breach of contract or breach of marriage." Pl.'s Ex. 4 ("Certified Copy of the Official Court Record of Exhibits in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 95).[5] Mr. Smith sought $6,000.00 in damages. Believing that Mrs. Stokely was responsible for the failure of his relationship with Linda Danner, Mr. Smith filed a separate lawsuit against Mrs. Stokely in Boone County, Indiana on July 24, 2008. Pl.'s Ex. A ("7/29/08 Claim Filed in Boone County Superior Court II").[6] He alleged that Mrs. Stokely "intentionally inflict[ed] monetary loss and emotional distress … in discharge of her role as Co-Attorney-In-Fact for Linda T. Danner, alleged Promisor." *Id*. Again, Mr. Smith sought $6,000.00 in damages.

In a letter from Mr. Smith to Mrs. Stokely dated September 6, 2008, he advised her that he was "dropping" both lawsuits. The letter stated:

> By the way, I'm dropping BOTH Suits the Week of SEPT 8th …I have pressing creative assignments to complete from the Obama Campaign … no more time to devote to Legalistics … but wasn't the past 6 weeks sheer fun? As to myself, I spent only $200 – from start to finish; how 'bout you?

Pl.'s Ex. 4 ("Certified Copy of the Official Court Record of Exhibits in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 57) (emphasis in original). On September 8, 2008, Mr. Smith filed motions to voluntarily withdraw both lawsuits, stating that he "no longer has sufficient time to devote to further prosecution of said Cause … especially given business

---

[5] Although the title of Exhibit 4 references the Boone County Court record, the exhibit includes pleadings, orders and other documents from the Marion County case as well.

[6] Exhibit A's title references an incorrect filing date of July 29, 2008. The state court record reveals that Mr. Smith's claim was actually filed on July 24, 2008.

constraints or demands on his Professional Schedule." Pl.'s Ex. 4 ("Certified Copy of the Official Court Record of Exhibits in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 98); Pl.'s Ex. B ("9/8/08 Motion for Voluntary Withdrawal & 9/12/08 Order Filed in Boone County Superior Court II"). The state court entered written orders - on September 29, 2008 in Marion County and on September 12, 2008 in Boone County - granting Mr. Smith's motions and dismissing the cases. Pl.'s Ex. 4 ("Certified Copy of the Official Court Record of Exhibits in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 101); Pl.'s Ex. B ("9/8/08 Motion for Voluntary Withdrawal & 9/12/08 Order Filed in Boone County Superior Court II").

On September 29, 2008, Mr. Smith filed a second lawsuit against Mrs. Stokely in Boone County, Indiana. In this suit, he alleged that Mrs. Stokely had intentionally inflicted upon him "deep and abiding emotional anguish" and had engaged in "character assassination." Pl.'s Ex. C ("9/29/08 Claim Filed in Boone County Superior Court II"). Again, Mr. Smith sought $6,000.00 in damages.

Mrs. Stokely moved to dismiss the second suit, and in a written order entered on March 2, 2009, the state court granted her motion. The court found that "Mr. Smith independently and collectively failed to establish any of the necessary elements [for defamation and/or intentional infliction of emotional distress] and would not be entitled to relief under any set of circumstances." Pl.'s Ex. D ("3/29/09 Order on Dismissal Motions, Discovery Matters and Pre-Trial Conference Filed in Boone County Superior Court II" at p. 2).

Mrs. Stokely also filed a counterclaim against Mr. Smith for abuse of process. Pl.'s Ex. E ("10/17/08 Counterclaim Filed in Boone County Superior Court II"). Mrs. Stokely alleged, *inter alia*, that Mr. Smith "maliciously brought suit and caused process to be issued" against her.

*Id*. She further alleged that Mr. Smith initiated the suits against her "for the ulterior and wrongful purpose of hindering, harassing and other wise causing harm to [her] and/or her family." *Id.*

On June 16, 2009, a bench trial was held on Mrs. Stokely's counterclaim for abuse of process. Counsel for the plaintiff provided evidence, including the sworn testimony of witnesses, and presented arguments to the court in support of the plaintiff's counterclaim. Mr. Smith failed to appear for trial and accordingly, presented no testimony or objections to the plaintiff's evidence and arguments. On June 24, 2009, the state court entered judgment on the counterclaim in favor of Mrs. Stokely and against Mr. Smith. The Judgment provided, in pertinent part, as follows:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED BY THE COURT that as to her Abuse of Process Claim, Judgment is entered for Compensatory Damages against Larry R. Smith and in the favor of Jeanette Tarkington Stokely in the amount of One Dollar ($1.00).
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED BY THE COURT that Jeanette Tarkington Stokely has established, by clear and convincing evidence, that Larry Smith acted with malice, fraud, gross negligence or oppressiveness which was not a result of mistake of fact, or law, honest error, or judgment, overzealousness, mere negligence, or other human failing; but that Larry Smith acted with willful and wanton misconduct. Jeanette Tarkington Stokely has also forwarded a claim as a request for sanctions against Mr. Smith for his failure to comply with this Court's Discovery Orders and for failing to appear at his subpoenaed deposition. Accordingly, the Court enters Judgment against the [defendant] Larry R. Smith and on behalf of Jeanette Tarkington Stokely in the sum of Ninety Nine Thousand Nine Hundred Ninety Nine Dollars ($99,999.00) as punitive damages and for ongoing sanctions related to this cause.

Pl.'s Ex. F ("6/24/09 Judgment Filed in Boone County Superior Court II" at pp. 1-2). In addition, the court awarded Mrs. Stokely attorney fees and costs in the amount of $35,374.40.[7]

On July 20, 2009, the state court entered an order clarifying the award of punitive damages and sanctions as follows:

> Judgment is hereby entered against Larry R. Smith in favor of Jeanette Tarkington Stokely, as punitive damages, in the sum of Forty Nine Thousand Nine Hundred Ninety Nine Dollars ($49,999.00).
>
> Judgment is hereby entered against Larry R. Smith and in favor of Jeanette Tarkington Stokely, as sanctions, in the sum of Fifty Thousand Dollars ($50,000.00).

Pl.'s Ex. 3A ("Certified Copy of the Official Court Record in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 432).

Mrs. Stokely later assigned her interest in the state court judgment to The Jeanette T. Stokely Amended and Restated Revocable Trust U/A 12/12/1994 (hereinafter "the Trust"). Pl.'s Ex. 5 ("Certified Copy of the Official Court Record of Assignment of Interest in Judgment Dated December 1, 2010, Recorded December 15, 2010 in the Office of the Saline County Clerk, Saline County, Illinois"). The trustee of that Trust is The National Bank of Indianapolis, the plaintiff in this case.

---

[7] The court awarded attorney fees as "ongoing sanctions" for Mr. Smith's failure to comply with the court's orders. *Id.* at p. 2. The court also based its award of fees on Ind. Code § 34-52-1-1, which provides in part:

> In any civil, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable or groundless;
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
> (3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b).

On October 30, 2013, Mr. Smith filed a chapter 7 bankruptcy petition, listing the Trust as a general unsecured creditor. The Trust filed a claim in the total amount of $151,095.60, which included the judgment amount of $135,374.40 plus interest of $15,721.20. The plaintiff timely filed the instant complaint on January 30, 2014, alleging that the debt owed by Mr. Smith to the Trust is nondischargeable under 11 U.S.C. § 523(a)(6).

*Analysis*

Summary judgment is appropriate only "when the evidence, viewed in a light most favorable to the non-moving party, shows that there is 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. Sept. 4, 2014) (citing Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The party moving for summary judgment has the burden of showing that no genuine issue of material fact is in dispute. *Muniz v. Bozorgzadeh*, 2012 WL 2803741, at *3 (Bankr.S.D.Ill. July 10, 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). Although a court must view the evidence in a light most favorable to the non-moving party, "the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Armato v. Grounds*, 766 F.3d at 719 (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

In support of its motion for summary judgment, the plaintiff asserts that under the doctrine of collateral estoppel, this Court is bound by the state court's findings that Mr. Smith acted with malice and willful and wanton misconduct. The Court must determine whether application of collateral estoppel is appropriate and if so, whether the state court's findings establish a willful and malicious injury under § 523(a)(6).

8

A. *Collateral Estoppel*

Collateral estoppel "bars relitigation of issues determined in prior court actions and applies to discharge exception proceedings under §523(a)." *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) (citing *Grogan v. Garner*, 498 U.S. 279, 284 (1991)). "Federal courts must give state court judgments the same preclusive effect as a court in the rendering state, applying that state's law." *Gambino v. Koonce*, 757 F.3d at 608 (citing *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002)). Accordingly, in this case, Indiana law determines whether the state court judgment must be given preclusive effect.

In Indiana, collateral estoppel bars relitigation of an issue that was necessarily adjudicated in a prior suit and is raised again in a subsequent suit. *Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 137 (Ind. 1992). "[T]he first adjudication will be held conclusive even if the second action is on a different claim." *Id*. (citations omitted). Indiana law previously required identity of parties and mutuality of estoppel[8] before collateral estoppel could be invoked. Under the modern approach now followed in Indiana, strict adherence to those requirements is no longer necessary. *Id*. at 138. Instead, the court must consider "(1) whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue; and (2) whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 230 (Ind.Ct.App. 2013) (citing *Eichenberger v. Eichenberger*, 743 N.E.2d 370, 375 (Ind.Ct.App.2001)).

In the instant case, the plaintiff contends that Mr. Smith is barred from relitigating the issue of whether he acted willfully and maliciously. That issue, plaintiff contends, was already

---

[8] "Identity of parties" means that "the party to be bound by a prior adjudication must be the same as or in privity with the party in the prior action." *Id*. "Mutuality of estoppel" means that the party taking advantage of the prior adjudication would also be bound if the prior judgment had gone the other way. *Id*.

9

adjudicated in state court. Plaintiff's argument requires an examination of the law governing abuse of process actions in Indiana.

In Indiana, a plaintiff claiming abuse of process must prove the following two elements: (1) an ulterior purpose or motive, and (2) a willful use of process not proper in the regular conduct of the proceedings. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 256 (Ind.Ct.App. 2013). "The purpose for which the process is used is the only thing of importance." *Id.* (citing *Nat'l City Bank v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997)). In other words, the plaintiff "must show a misuse or misapplication of process for an end other than that which it was designed to accomplish." *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d at 256 (citing *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind.Ct.App. 2005)). The gravamen of an abuse of process claim "is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." *Nat'l City Bank, Ind. v. Shortridge*, 689 N.E.2d at 1252 (citing *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)). "[I]ntent is the essence of [an abuse of process] claim." *Town of Orland v. Nat'l Fire & Cas. Co.*, 726 N.E.2d 364, 371 (Ind.App. 2000) (emphasis added).

In order for the trial court to find that Mr. Smith was liable for the tort of abuse of process, the court necessarily had to find that Mr. Smith acted with an ulterior purpose and willfully misused the legal process. In doing so, the state court specifically found that Mr. Smith acted "with malice fraud, gross negligence or oppressiveness." Pl.'s Ex. F ("6/24/09 Judgment Filed in Boone County Superior Court II, at p. 1). Based on the elements required to prove abuse of process and on the state court judgment against Mr. Smith, the Court concludes that the issue of whether Mr. Smith acted willfully and maliciously was necessarily adjudicated in state court.[9]

---

[9] When a court must consider whether the decision of a prior court operates as an estoppel, it is not always presented with specific findings. "Instead, it may have nothing more than an ultimate conclusion which indicates that the

In deciding whether collateral estoppel may be applied, Indiana law also requires this Court to consider whether Mr. Smith had a full and fair opportunity in state court to litigate this issue and whether it would otherwise be unfair to permit the use of collateral estoppel. Mr. Smith clearly had a full and fair opportunity to litigate the issue of whether his conduct was willful and malicious. The fact that Mr. Smith was not present at trial is of no consequence. "The focus of the court's attention should be upon the *opportunity* to litigate the issue…." *In re Staggs*, 178 B.R. 767, 778 (Bankr.N.D.Ind. 1994), *aff'd*, 177 B.R. 92 (N.D.Ind.1995). In *Staggs*, the plaintiff had obtained a state court judgment against the debtor on a battery complaint. The plaintiff sought a determination that the debt arising out of the judgment was nondischargeable under § 523(a)(6). The bankruptcy court held that the debtor was collaterally estopped from disputing that his actions were willful and malicious, even though the state court judgment was entered on the plaintiff's unopposed motion for summary judgment. The court stated:

> The court concludes that the Indiana courts would not adopt a rule that refuses to give preclusive effect to a decision made after a one-sided trial based upon the proposition that an issue determined in that fashion was not actually litigated. Instead, they would recognize that the actually litigated requirement of collateral estoppel is satisfied whenever, after a party has appeared in the action and contested an issue, that issue is presented to the court for a decision based upon the facts or evidence put before it. The

---

plaintiff has prevailed under a particular theory." *In re Busick*, 264 B.R. 518, 525 (Bankr.N.D.Ind. 2001). As the court in *Busick* explained:

> This lack of specific factual findings … will not prevent such a decision from operating as an estoppel. In these circumstances, it may be necessary to look somewhat beyond the literal wording of the court's judgment in order to determine what facts a plaintiff necessarily had to prove to allow the finder of fact to come to its conclusion.

*Id. See also In re Leventhal*, 481 B.R. 409, 420 (N.D.Ill. 2012), *aff'd* 2013 WL 599520 (7th Cir. Fe. 6, 2013) (while collateral estoppel applies only to issues that have been necessarily decided, express factual findings are not required because an issue may be decided from findings implicit in the judgment).

> determination made by the [state court] clearly fulfills this standard.

*Id.*[10]

In this case, Mr. Smith chose not to appear for trial and he cannot now claim that he was deprived of an opportunity for full and fair litigation in state court. As the trial judge stated, "[a]lthough Larry Smith was aware of the June 16, 2009 trial date, *he chose not to appear for trial* and presented no testimony nor objection to evidence presented or argument made at trial by Defendant/Counterclaim Plaintiff." Pl.'s Ex. 3A ("Certified Copy of the Official Court Record in Case No. 06D02-0810-PL-152 of Boone County Superior Court II" at p. 432") (emphasis added).

Would it otherwise be unfair under the circumstances to permit the use of collateral estoppel? Mr. Smith has offered no reason, and the Court, having carefully reviewed the record in this case, cannot conceive of any reason why it would be "otherwise unfair under the circumstances" to allow the use of collateral estoppel.

B. *Willful and Malicious Injury under the Bankruptcy Code*

The Court still must determine whether the state court's findings are sufficient to establish a willful and malicious injury under §523(a)(6) of the Bankruptcy Code. To prove that a debt is nondischargeable under § 523(a)(6), the following three elements must be established: (1) an injury caused by the debtor (2) willfully and (3) maliciously. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013). The burden is on the creditor to prove these elements by a preponderance of the evidence. *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). An injury is willful only if it is deliberate or intentional. *Kawaauhau v. Geiger*, 523

---

[10] In a similar vein, the Seventh Circuit Court of Appeals, applying Illinois law, held that "actually litigated" "does not mean thoroughly litigated, but only that the parties disputed the issue and the trier of fact resolved it." *Gambino v. Koonce*, 757 F.3d at 608 (citing *Harmon v. Gordon*, 712 F.3d 1044, 1055 n.4 (7th Cir.2013)).

U.S. 57, 61-62, 118 S.Ct. 974 (1998). If the injury is the result, but not the *intended* result of an intentional act, the debt arising from the injury is dischargeable. *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) (emphasis in original) (citing *Kawaauhau v. Geiger*, 523 U.S. at 61-62)). An injury is malicious if "the debtor acted 'in conscious disregard of [his] duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.'" *First Weber Group, Inc. v. Horsfall*, 738 F.3d at 774 (citing *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)).

The term "injury" is not defined in the Code, but "is understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *First Weber Group, Inc. v. Horsfall*, 738 F.3d at 774. (citing *In re Lymberopoulos*, 453 B.R. 340, 343 (Bankr.N.D.Ill. 2011)). Clearly, the state court found that Mr. Smith caused injury to Mrs. Stokely when it awarded her punitive damages, sanctions and attorney fees.

Did the state court find that Mr. Smith's actions were willful within the meaning of §523(a)(6)? That is, did the court find that Mr. Smith intended to injure Mrs. Stokely? In its judgment, the court found that Mr. Smith's actions were *not* the result of mistake or mere negligence and that he acted with willful and wanton misconduct. In reaching this ultimate determination, the court necessarily found that Mr. Smith intended to cause injury to Mrs. Stokely. *See Town of Orland v. Nat'l Fire & Cas. Co.*, 726 N.E.2d at 371 (intent is the essence of an abuse of process action).[11]

The state court's findings also establish that Mr. Smith's actions were malicious within the meaning of § 523(a)(6). The court specifically found that Mr. Smith acted "with malice,

---

[11] There is not necessarily "a precise correspondence between a state law cause of action and the different elements a creditor might need to prove under § 523(a)." *In re Busick*, 264 B.R. at 525. In a subsequent dischargeability action, "the bankruptcy court will be called upon to examine [the state court's] ultimate finding in light of the particular elements which had to be proved to generate it, and then determine whether those elements corresponded with the proof required by a particular portion of § 523(a)." *Id*. (citations omitted).

fraud, gross negligence or oppressiveness which was not a result of mistake of fact or law, honest error, or judgment … or other human failing." Pl.'s Ex. F ("6/24/09 Judgment Filed in Boone County Superior Court II" at p. 1). These findings clearly support the conclusion that Mr. Smith acted "in conscious disregard of [his] duties or without just cause or excuse," *First Weber Group, Inc. v. Horsfall*, 738 F.3d at 774, and therefore, that he acted maliciously under §523(a)(6).

Other courts also have held that abuse of process judgments are nondischargeable under §523(a)(6). For example, in *In re Black*, 487 B.R. 202 (9th Cir.BAP 2013), the court found:

> The bankruptcy court correctly determined that "ulterior purpose" under an abuse of process claim equates with "willfulness" under §523(a)(6). It properly gave issue preclusive effect to the state court judgment on the abuse of process claim. We therefore determine that the bankruptcy court did not err in granting summary judgment on the abuse of process portion of the appellees' § 523(a)(6) claim.

*Id*. at 213.[12] Similarly, in *In re Day* 409 B.R. 337 (Bankr.D.Md. 2009), the court found that collateral estoppel applied to render nondischargeable a $5,000.00 damage award for abuse of process. The court stated that "[e]very court that has considered the issue has held that state court judgments for abuse of process are nondischargeable under Section 523(a)(6)." *Id*. at 345 (citations omitted).

Likewise, in *In re Scarborough*, 171 F.3d 638 (8th Cir. 1999), *cert. denied*, 528 U.S. 931 (1999) – one of the cases cited in *Day* – the court found that because the question of debtor's willfulness and malice had been litigated in a state court action for malicious prosecution and abuse of process, the debtor could not relitigate that question in a § 523(a)(6) dischargeability proceeding. With respect to the abuse of process claim, the court explained:

---

[12] In *Black*, the underlying state court action involved an abuse of process action under Nevada law. The elements required to prove abuse of process in Nevada are the same as those required under Indiana law. *Id*. at 212.

> The jury instruction for abuse of process required the jury to find that "[f]irst, [Scarborough] made an illegal, improper, perverted use of process that was neither warranted nor authorized by the process, and [s]econd, [Scarborough] had an improper purpose in exercising such illegal, improper or perverted use of process…." As stated above, acting with a purpose is synonymous with acting willfully. Again, "maliciously" requires that Scarborough's actions were certain or almost certain to cause [the creditor] harm….Thus, as a matter of law, we hold that the issue of whether Scarborough acted willfully and maliciously in abusing judicial process was necessarily decided in the state case.

*Id*. at 643 (citation omitted).[13]

### C. Mr. Smith's Objection

The Court concludes its opinion by addressing the arguments raised by Mr. Smith in his objection to the plaintiff's motion for summary judgment.[14] Mr. Smith does not address the plaintiff's arguments with respect to collateral estoppel. Instead, the defendant argues that the instant adversary complaint was improperly filed in East St. Louis, Illinois instead of Benton, Illinois. Mr. Smith has repeatedly raised the very same argument throughout the course of this case and the Court has, on more than one occasion, explained why his argument has no merit. The Court repeats its explanation here: East St. Louis and Benton are divisional offices of the same bankruptcy court, i.e., the Bankruptcy Court for the Southern District of Illinois. Bankruptcy cases and adversary cases may be filed in either place. *See* S.D.Ill. LBR 5001-1.

In addition, Mr. Smith appears to argue that the complaint was not timely filed. The Bankruptcy Rules provide that a creditor may file a complaint to determine dischargeability of debt within sixty days after the first date set for the meeting of creditors. Bankr.R. 4007(c). In

---

[13] Although the underlying state court action for abuse of process was brought in Missouri, the jury instructions substantially mirror the elements required to prove abuse of process in Indiana – a misuse of process with an ulterior purpose.

[14] Throughout the course of this adversary case, Mr. Smith has filed numerous pleadings, many of which contain incomprehensible and/or nonsensical arguments. Nevertheless, because Mr. Smith is proceeding without the benefit of counsel, the Court has devoted a great deal of time and patience in reviewing his pleadings and attempting to decipher his arguments.

this case, the first meeting of creditors was held on December 16, 2013, and the plaintiff's complaint was timely filed on January 30, 2014. While Mr. Smith seems to further argue that the complaint cannot proceed once the order of discharge is entered, that argument likewise has no merit. The order of discharge is not applicable to a timely filed dischargeability complaint. *In re Ashbury,* 250 B.R. 59, 65 (Bankr.D.Md. 2000) (granting of a discharge does not affect a pending complaint to determine dischargeability of debt because the relief sought in the complaint is that one or more debts be excepted from discharge).

Mr. Smith next argues that "matters of intent (i.e., malice) are inappropriate for resolution at the summary judgment stage" and further, that the plaintiff has not presented "a smidgen/iota of personal testimony" with respect to any "malicious injury" sustained by Mrs. Stokely. Def.'s "Comprehensive Response to Plaintiff-Creditor's Motion for Summary Determination as filed August 14, 2014" at pp. 12, 14 (court document # 145). Mr. Smith completely ignores the state court's findings that he acted with malice, fraud, gross negligence or oppressiveness and that his conduct was willful and wanton. Nor does he respond to the plaintiff's central argument, *i.e.*, that under the doctrine of collateral estoppel, this Court is bound by those findings.

Finally, Mr. Smith *appears* to argue that a genuine issue of material fact exists,[15] but he fails to identify the facts that he believes are in dispute. He states further that "genuine" means there is evidence to support the position of the non-moving party. *Id*. at p. 12. The Court is left to wonder what that evidence is. Mr. Smith has offered no evidence whatsoever to support his position that a genuine issue of material fact exists. While the Court agrees that it must view the evidence in a light most favorable to the non-moving party, "*the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.*" *Armato v. Grounds* at

---

[15] In his Response, Mr. Smith states, "When there [is] a dispute to 'genuine issue of material fact,' summary judgment should be 'denied' by the trial court." *Id*. at p. 13.

*4 (emphasis added) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith radio Corp.*, 475 U.S. 574, 587 (1986)).  Mr. Smith has failed to do so.

Accordingly, for the reasons stated, the plaintiff's motion for summary judgment is GRANTED.

See Order entered this date.

ENTERED: January 30, 2015

                                         /s/ Laura K. Grandy
                                    UNITED STATES BANKRUPTCY JUDGE